The State, *ex rel.* Coleman, *v.* Peckham *et al.*

Filed Jan. 5, 1894.

———————◆———————

No. 16,434.

THE STATE, EX REL. COLEMAN, *v.* PECKHAM ET AL.

GUARDIAN AND WARD.—*Report.—Resignation.—Final Report.—Suit on Bond.—Res Adjudicata.*—Where a guardian files his report and tenders his resignation, and the report is approved and his resignation accepted, such settlement and resignation are binding on all persons interested in the estate, as to the matters properly embraced in the report and its approval by the court, yet it is not final, and is no bar to a suit on the bond of the guardian, as to matters not properly embraced in the adjudication.

SAME.—*Joinder of Causes of Action.—Plea in Bar.—Res Adjudicata.—Negligence.*—A ward may bring suit on his guardian's bond and join therewith an action to set aside an order approving the last report of the guardian and discharging him from his trust; and the report of the guardian and order of the court discharging the guardian from

The State, *ex rel.* Coleman, *v.* Peckham *et al.*

his trust constitute no bar to such action, the matters complained of not being those disclosed in the report and adjudicated by the court, but rather the matters that were concealed from the knowledge of the court, and were not passed upon in the order of approval, relating to the negligence of the guardian.

From the Clinton Circuit Court.

*R. W. Irvin, J. V. Kent* and *S. Tryon,* for appellant.
*F. W. Chase,* for appellees.

HOWARD, C. J.—This was a suit brought by the relatrix, in the name of the State, against the appellees, being her former guardian and the sureties on his bond, charging fraud in said guardian's settlement account, asking that said account be set aside, and that she be awarded judgment in the sum of twelve thousand dollars.

The appellees answered by a general denial, and also in a special plea by way of confession and avoidance.

The relatrix demurred to the special plea as not stating facts sufficient to constitue a defense to the complaint.

The appellees then withdrew their answer in general denial, and the court overruled the demurrer to the special answer, but held the demurrer to relate back to, and sustained it to, the complaint.

The relatrix electing to stand by her complaint, this appeal followed.

The errors discussed by counsel relate to the sufficiency of the complaint.

From the allegations of the complaint, it appears, amongst other things, that in March, 1872, the appellee William S. Peckham was duly appointed guardian of the relatrix, then a minor; that he executed the bond set out with the complaint, on which his coappellees are also liable; that he continued to act as such guardian until the 1st day of February, 1875, during which time he received, as such guardian, the sum of seven thous-

and dollars, the property of his ward; that on June 22, 1872, he loaned to a copartnership, known as the Lafayette Paper Company, the sum of five thousand dollars out of his said ward's funds, without authority of law and without an order of court, but solely upon his own motion, and took from said borrowers for such loan their note, signed only by said firm and by the individual members thereof, payable in twelve months, and without any security whatever; that from time to time, as the loans matured, the said guardian renewed the same, and took in like manner notes therefor, without security, until the 15th day of December, 1874, when he again renewed the loan for six months, taking a note signed by the copartnership and its members, as before, payable to himself, as guardian, without security, and due in six months.

It is averred that during the time these loans and renewals were made the money could have been readily loaned in the city of Lafayette, where said guardian and ward resided, at ten per cent. interest, and upon good first mortgage real estate security.

It is further alleged, that on said 1st day of February, 1875, said guardian filed in the Tippecanoe Circuit Court his report as guardian, representing, amongst other things, that part of his ward's estate consisted "of a note for $5,000 signed by Lafayette Paper Mill Company, W. A. Potter, Samuel Favorite, H. T. Sample and Fred Geiger, dated December 15, 1874, and that it would be adverse to the interest of his ward to disturb the investment made by him;" that in said report he tendered his resignation as such guardian, and asked the court to approve said investment; that the court did accept and approve said report, and also accepted the resignation of said guardian, and ordered that he should be discharged from all further liability on account of his said trust.

The State, *ex rel.* Coleman, *v.* Peckham *et al.*

The complaint further avers, that said report was false and misleading in this, that it was not adverse to the interest of said ward, that said investment of $5,000 upon the unsecured note of said copartnership should be undisturbed; but, on the contrary, at the time of making said report, and also on said 15th day of December, 1874, when said note was made, and for a long time before, the said firm and each member thereof were insolvent, which fact the said guardian well knew, but failed and omitted to inform the court of said fact; and failed and omitted to inform the court that said paper mill company was unincorporated, and was only a private copartnership, composed only of the signers of said note, and that the safety of said assets of said ward required that prompt steps should be taken to collect or secure the same, which fact was true and well known to said guardian, because of which insolvency said sum of money has become wholly lost; that said guardian in and by said report and resignation did not inform the court that said note of said firm was for moneys of said ward theretofore loaned by him as such guardian to said firm; that said report was filed and said order of court was made *ex parte* and without the knowledge or consent of said ward, and is wrongful and oppressive; that on the day of his said discharge said guardian assigned, without recourse on himself, said note to his successor.

It is first contended by counsel, that the order of the Tippecanoe Circuit Court approving the final report and accepting the resignation of the guardian was an adjudication of the claim here made by the relatrix.

In *Wainwright* v. *Smith*, 106 Ind. 239, it was held that it is not necessary that the approval of a guardian's report in final settlement should be set aside in order to maintain an action against the guardian for negligence, unless the approval of the report was in some way an

adjudication of the matters of which complaint is made; that the approval of such settlement report is an adjudication of all matters involved in, or which properly belong to, the proper accounting of moneys with which the guardian was chargeable; but that such approval does not adjudicate the subject of the guardian's negligence in the management of the ward's estate, unless that subject is embraced in the report. See, also, *Naugle* v. *State, ex rel.*, 101 Ind. 284.

The rule thus laid down as to final settlement reports, and when the ward has arrived at full age, must prevail even more strongly in case of *ex parte* orders made from time to time during the pendency of the guardianship, and while the ward is yet incapable of acting for himself.

Of such *ex parte* orders, it is said, in the case of *State, ex rel.*, v. *Wheeler*, 127 Ind. 451, that whether made by the court by way of direction to the guardian, or of approval of action theretofore taken by him, they are, like those made in the settlement of an estate, to be regarded as *prima facie* correct, but are, as a rule, within the control of the court making them until final settlement of the guardianship; and that such orders may, at all times before final settlement and discharge of the guardian, be set aside, corrected, or modified, if the requirements of justice demand it.

Because the guardian in this case, on making the report in question, resigned his trust and was discharged by the court, it is contended that the settlement thus made was a final settlement. This can not be correct. It is true that the guardian thus withdrew himself from his trust, and was relieved as to all subsequent liability therein; but the guardianship itself continued, and, as to that, the settlement made was only partial and its approval *ex parte*.

As to estates, it has been expressly decided by this court that the final report of an outgoing administrator or executor, resigning his trust before settlement of the estate, and the approval of such report, followed by his discharge by the court, do not constitute the "final report" contemplated by the statute, and, therefore, are no bar to an action on the bond of such administrator or executor. *Parsons, Admr.,* v. *Milford, Admr.,* 67 Ind. 489.

While such settlement and resignation are binding on all persons interested in the estate, as to matters properly embraced in the report and its approval by the court, yet it is not final, and is no bar to a suit on the bond of the administrator or executor for matters not properly embraced in the adjudication. *Lang* v. *State, ex rel.,* 67 Ind. 577.

In the complaint in the case at bar, it is alleged that the report made to the court by the guardian was false and misleading in several respects; that it was not true, as stated in the report, that it was to the interest of said ward that the investment of $5,000 upon the unsecured note of said co-partnership should be left undisturbed; but that, on the contrary, at the time of making said report, and also at the date when said note was taken, and for a long time before, the said firm, and each member thereof, were insolvent, which fact the said guardian well knew, but failed and omitted to inform the court thereof, and failed and omitted to inform the court that said paper mill company was only a private co-part- nership, composed only of the signers of the note; and failed to inform the court that the safety of said assets required that immediate steps should be taken to collect or secure the same, which fact was true and well known to said guardian; that said loan was made without the order of court, on the sole motion of the

guardian, and in said report the guardian did not inform the court that said note was for moneys of his ward theretofore loaned by him as such guardian to said firm; that said money has become wholly lost by reason of the insolvency of said firm.

We think the matters thus alleged were not adjudicated by the order of the court. The court could not act upon what it did not know.

In *Slauter* v. *Favorite, Guar.,* 107 Ind. 291, it was said: "The guardian represented the note to be of its full face value, and withheld from the court the information that Moore had become insolvent. * * * He was guilty of fraud in conceding the fact that the maker of the note had become insolvent, as well as in representing that the note was of full face value. It will not avail a guardian who makes a positive representation, that he did not know that it was untrue, for, even in ordinary cases where a man makes a representation for the purpose of inducing action upon the part of another, he may be guilty of fraud although he does not know that his representation is not true. *Frenzel* v. *Miller,* 37 Ind. 1; *Bethell* v. *Bethell,* 92 Ind. 318, see page 327; *Roller* v. *Blair,* 96 Ind. 203; *West* v. *Wright,* 98 Ind. 335.

"But in cases such as the present a duty rests upon the guardian to make no statement that he does not know to be true, and to conceal nothing materially affecting his trust, of which he has knowledge. The necessity for a strong and stern application of the rule to cases like this is obvious, for the court must act upon the statements of the guardian, and there is no adverse party to challenge their truth. If the statements are not true, the order of the court rests on the wrong of the party who made it, and he can take no advantage of his own wrong."

And, in *Line* v. *Lawder,* 122 Ind. 548, it was said by

the court that "the burden rests upon the guardian to show * * that he exercised the required degree of care in taking securities, * * that they were good beyond peradventure, and that they will be collectible when they fall due. Before such a settlement shall be an exoneration, he is also bound to make full disclosure to the court of the settlement, and manner of payment, without any concealment or misrepresentation." It should appear, if notes were taken for loans, that the loans were prudently made upon collateral, or other adequate security; that "loans made on the credit of individuals or firms, without security, or with doubtful security, are ordinarily at the risk of the guardian. *Wyckoff* v. *Hulse*, 32 N. J. Eq. 697; *Estate of Post*, 57 Cal. 273; Schouler Domestic Relations, section 353."

That while it is true that a guardian "is not an insurer of the safety of the investments made by him," and is not to be held to an extraordinary degree of care, yet "in order that he may be exonerated from loss on account of insolvent securities taken in the course of the guardianship, it is his duty to act in good faith, and observe that sound dsscretion and prudence usually exercised by diligent men about their own business. In making loans of the trust funds it is his duty to take security."

From the facts pleaded in the case at bar, and from the authorities cited, we think it very clear that the report of the guardian and the order of the court discharging him from his trust constitute no bar to an action like this. The matters complained of by the relatrix are not those that were disclosed in the report and adjudicated by the court, but rather the matters that were concealed from the knowledge of the court, and were not passed upon in the order of approval; that order was therefore no bar to an action on the bond.

As to the kind of suit that should be brought, it is in a large degree a matter of choice with the ward.

As was said in *Hays* v. *Walker*, 90 Ind. 105: "The ward may sue on the bond in the name of the State if he elects, but he is not bound to do so; he has his election either to proceed against the guardian individually for breach of duty, or to sue on the bond."

In this case the ward has chosen to sue on the bond; but, by way of precaution, in case the court might hold that the matters sued on were adjudicated by the order approving the last report of the guardian and discharging him from his trust, she has united with said action, in the same complaint, an action to set aside said order. This, we think, she may do. It is within the spirit of the code, tending to avoid a multiplicity of suits and to do complete justice to all the parties in one proceeding. All "causes of action arising out of a contract or a duty" may be so united, provided they "affect all the parties to the action." R. S. 1881, section 278.

It can not be said that the surety on the bond and his representatives are not affected in the action to set aside the order confirming the report. They are equally interested with the principal on the bond in not having that order set aside, and are proper, though, perhaps, not necessary parties to that action.

We think the order was not an adjudication of the matters here in controversy, which have to do with the negligence of the guardian; but even if that order were such adjudication, this complaint is good for the setting aside of that order and the collection of the amount, if any, due on the guardian's bond. In either case, the complaint was not subject to the demurrer.

The judgment is reversed, with instructions to overrule the demurrer to the complaint, and for further proceedings.

Filed Jan. 5, 1894.