**FIRST FARMERS BANK & TRUST CO., Appellant–Defendant,**

v.

**Dianna F. WHORLEY, Appellee–Plaintiff.**

No. 34A02–0802–CV–124.

Court of Appeals of Indiana.

Aug. 5, 2008.

Karl L. Mulvaney, Nana Quay–Smith, Anne L. Cowgur, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellant.

Karen T. Moses, Damian B. Gosheff, Kevin J. Mitchell, Baker & Daniels LLP, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, First Farmers Bank & Trust Co. (First Farmers), appeals the trial court's denial of its motion for summary judgment and the grant of partial summary judgment in favor of Appellee–Plaintiff, Dianna F. Whorley (Whorley), in an action for breach of fiduciary duty following a guardianship.

We affirm in part, reverse in part, and remand for further proceedings.

### ISSUES

First Farmers raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred by denying First Farmers' motion for summary judgment; and

(2) Whether the trial court erred by granting Whorley's motion for partial summary judgment.

### FACTS AND PROCEDURAL HISTORY

On September 5, 2000, Franklin Zehring (Zehring), ninety-five years old and incapable to care for himself because of impairments resulting from a disabling stroke and forms of dementia, was declared legally incompetent. The trial court appointed First Farmers as guardian over Zehring's estate, while Zehring's daughter, Whorley, and Robert Beeler (Beeler) were appointed co-guardians over his person. At the time he was declared legally incompetent, a significant portion of Zehring's estate consisted of approximately 2700 acres of farmland in Howard County, Indiana, which was valued at an amount in excess of $5,000,000.00. Approximately ten percent of the farmland was farmed by Zehring's cousin, with the remainder of the farmland incorporated in a modified share crop arrangement with Roger Greeson, Sr. (Greeson). Under this agreement with Greeson, Zehring remained the owner-operator and Greeson acted as the farmland manager. It was understood by Zehring and Whorley that this share crop arrangement allowed the farmland to be eligible for a form of taxation, known as Special Use Valuation. Special Use Valuation is codified at section 2032A(b)(2) of the Internal Revenue Code and allows real property which is used for a qualified use by the decedent, or by a family member of the decedent at the time of the decedent's death, to receive a favorable tax rate.

In the fall of 2000, after First Farmers' appointment as guardian of the estate, Max Custer (Custer), First Farmers' Senior Vice President of the Trust Department, evaluated Zehring's financial and personal situation. Custer was concerned that the modified share crop arrangement would require hands-on participation from First Farmers and would result in high guardianship fees. Accordingly, he advised Zehring and Whorley to terminate the agreement with Greeson and convert the farmland to a cash rent arrangement. Custer noted several benefits in a cash rent arrangement including reduction in management costs, an influx of cash liquidity from the sale of farm equipment, increased cost certainty and corresponding reduction in cost risks, income stability, and elimination of concerns for crop theft or integrity of farm managers. He considered tax-related issues ranging from in-

come taxation, equipment depreciation, loss of deductible expenses, and accrual of income. After Custer discussed these factors with Zehring and Whorley, they agreed that cash rent was a more favorable arrangement for Zehring. First Farmers did not inform Whorley or Beeler that its decision to cash rent the farmland would render the estate ineligible for Special Use Valuation or have any additional tax consequences for Zehring's estate.

On January 24, 2002, Zehring passed away and a probate estate was opened on February 7, 2002. On October 24, 2002, First Farmers filed the estate's tax return with the Internal Revenue Service (IRS). Despite the fact that First Farmers had converted the farmland to cash rent, First Farmers sought to elect Special Use Valuation. On December 12, 2002, First Farmers filed the Guardian's Final Report and Petition to Terminate Guardianship. That same day, Whorley filed a Waiver and Consent to Guardian's Final Accounting. The next day, the trial court terminated First Farmers' guardianship and First Farmers was appointed executor and personal representative of the probate estate.

On April 12, 2004, after the probate estate had closed, the IRS notified Whorley that Special Use Valuation for the farmland was denied, resulting in an additional tax liability to the estate in the amount of $573,474.00. As the estate did not have sufficient liquid assets to satisfy the accrued tax liability, Whorley, at First Farmers' suggestion, borrowed the required amount from First Farmers.

On April 8, 2005, Whorley filed a Complaint against First Farmers, asserting that First Farmers had breached its duties as guardian of the estate by failing to evaluate the effect of converting the main corpus of the estate, 2,700 acres of farmland, from a modified share crop arrangement to a cash rent farm resulting in a significant tax liability to the estate. On January 8, 2007, Whorley filed her Motion for Partial Summary Judgment, seeking judgment as a matter of law on the issue of First Farmers' liability for the additional taxes. Thereafter, on March 12, 2007, First Farmers filed its Response in Opposition and Cross–Motion for Summary Judgment alleging that Whorley's claim was time-barred and she did not have standing to bring the instant cause. In addition, First Farmers denied being liable for damages as it acted in good faith. On August 15, 2007, after the parties filed respective responses, the trial court heard evidence on the motions. On January 14, 2008, the trial court entered its Order granting partial summary judgment to Whorley and denying First Farmers' cross-motion for summary judgment.

First Farmers now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, First Farmers contests the trial court's denial of his motion for summary judgment and the grant of Whorley's motion for partial summary judgment and requests us to reverse the trial court's judgment and to enter summary judgment in its favor.

### I. Standard of Review

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Hendricks Co. Bd. of Comm'rs v. Rieth–Riley Const. Co., Inc.*, 868 N.E.2d 844, 848–49 (Ind.Ct.App.2007). Thus, on appeal, we must determine whether there is a genuine issue of material fact and

whether the trial court has correctly applied the law. *Id.* at 849. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id.* The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id.* When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Indiana Michigan Power Co. v. Runge,* 717 N.E.2d 216, 226 (Ind.Ct.App.1999), *reh'g denied.* Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *RiethRiley Const. Co., Inc.,* 868 N.E.2d at 849. When the parties have filed cross-motions for summary judgment, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Keaton & Keaton v. Keaton,* 842 N.E.2d 816, 819 (Ind.2006).

We observe that in the present case, the trial court entered detailed and helpful findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.,* 816 N.E.2d 40, 48 (Ind.Ct.App.2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Denial of First Farmers' Motion for Summary Judgment*

First Farmers now claims it is entitled to summary judgment and challenges the trial court's Order on two separate procedural grounds. First, First Farmers asserts the trial court erred by concluding that Whorley's claim is governed by the tort claim statute. Rather, First Farmers maintains that Whorley's claim is subject to the one-year statutory limitation embedded in the guardianship statute. Second, First Farmers contests Whorley's standing to bring her cause of action as her claim is founded solely upon duties First Farmers owed to Zehring, not to Whorley, and which resulted in damages to his estate.

### A. *Statute of Limitations*

In its Order, the trial court characterized Whorley's cause of action against First Farmers as a tort claim for injury to personal property subject to Indiana's discovery rule and the two-year statute of limitations, set forth in I.C. § 34–11–2–4. Rejecting the trial court's conclusion, First Farmers asserts that as Whorley's claim is based on First Farmers' actions as a guardian over Zehring's estate, the one-year time period of Indiana's guardianship provisions governs Whorley's Complaint. Since she filed outside this one-year time limit, First Farmers maintains that Whorley's action is barred.

Indiana Code section 29–3–9–6 relates to a guardian's obligations to account to the court for the protected person's property. Subsection (g) states as follows:

**Account of administration; filing with court; notice of hearing on account; order of discharge; limitation of actions against sureties.**

. . .

(g) When a guardian files with the court proper receipts or other evidence satisfactory to the court showing that the guardian delivered to the appropriate person all the property for which the guardian is accountable as guardian, the court shall enter an order of discharge. The order of discharge operates as a release from the duties of the guardian's

office that have not yet terminated and operates as a bar to any suit against the guardian and the guardian's sureties, unless the suit is commenced within one (1) year from the date of the discharge. First Farmers interprets this section to stand for the premise that "any suit" against the guardian, regardless of its nature or origin, must be brought within this statutorily defined period of one year.

■ As has been the law in Indiana for more than one hundred years,

> it is not necessary that the approval of a guardian's report in final settlement should be set aside, in order to maintain an action against the guardian for negligence, unless the approval of the report was in some way an adjudication of the matters of which complaint is made; that the approval of such settlement report is an adjudication of all matters involved in, or which properly belong to, the proper accounting of moneys with which the guardian was chargeable; but that such approval does not adjudicate the subject of the guardian's negligence in the management of the ward's estate, unless that subject is embraced in the report.

*State ex rel. Coleman v. Peckham,* 136 Ind. 198, 36 N.E. 28, 29 (1894); *see also Wainwright v. Smith,* 106 Ind. 239, 6 N.E. 333, 334 (1886); *State ex. rel. Millice v. Petersen,* 36 Ind.App. 269, 75 N.E. 602, 604 (1905). In other words, the approval of a guardian's final report is only an adjudication of all matters included within the report; it is not an adjudication of a subject that is not embraced in the report. Although we recognize that the cases relied upon are not of recent vintage, they represent our courts most recent determinations

on the issue and we are not free to disregard them.

Here, Whorley's Complaint focuses on First Farmers' decision to convert the modified share crop arrangement of the farmland to a cash rent without evaluating the tax consequences on Zehring's estate. Our review of First Farmers' final accounting as a guardian does not reveal any references to the additional tax liabilities resulting from the farmland's conversion. Rather, the final accounting is merely a list of Zehring's assets at the time the guardianship terminated. Because Whorley's claim is separate and distinct from First Farmers' final accounting, we find the one-year limitation on bringing claims pursuant to I.C. § 29-3-9-6(g) not to be applicable to Whorley's Complaint.[1]

■ In essence, Whorley's allegation that First Farmers, as a guardian, had a duty to manage "Zehring's assets in Zehring's best interest and ... to avoid any unnecessary negative tax consequences in its management of Zehring's assets" gives rise to a fiduciary duty claim. (Appellant's App. p. 25). *See Teegarden v. Lewis,* 145 Ind. 98, 44 N.E. 9, 10 (1896) (a fiduciary duty arises where relations between parties are those of guardian and ward). Arguing that First Farmers breached this duty by incurring additional tax liabilities due to its conversion of the farmland to a cash rent operation, Whorley molded her complaint as a tort claim for injury to personal property, subject to a two-year statute of limitation. I.C. § 34-11-2-4(2); *Del Vecchio v. Conseco, Inc.,* 788 N.E.2d 446, 451 (Ind.Ct.App.2003), *trans. denied* (citing *Shriner v. Sheehan,* 773 N.E.2d 833, 846 (Ind.Ct.App.2002) (breach of fidu-

---

1. Because we decide that I.C. § 29-3-9-6 is not applicable to the instant cause, we need not address First Farmers' contention that the disputed statute is a statute of repose and not

a statute of limitations. *See, e.g., Kissel v. Rosenbaum,* 579 N.E.2d 1322, 1326 (Ind.Ct. App.1991).

ciary duty is a tort claim for injury to personal property and therefore the statute of limitation is two years)).

 Pursuant to Indiana code section 34–11–2–4(2), a cause of action in a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another. *Wehling v. Citizens Nat'l. Bank,* 586 N.E.2d 840, 843 (Ind.1992). For a cause of action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred. *Del Vecchio,* 788 N.E.2d at 449.

In the case at bar, Whorley and Zehring met Custer in the fall of 2000 to discuss the termination of the modified share crop arrangement and commence a cash rent of the farmland. While certain tax-related issues were mentioned during this meeting, Custer never informed them about the estate's ineligibility for Special Use Valuation and its corresponding favorable tax regime. On January 24, 2002, Zehring passed away and a probate estate was opened on February 7, 2002. On October 24, 2002, First Farmers, as guardian, filed the estate's tax return with the IRS, seeking Special Use Valuation of the farmland. Thereafter, on December 12, 2002, First Farmers filed the Guardian's Final Report and Petition to Terminate Guardianship which was approved by the trial court the next day. Approximately one-and-a-half years later, on April 12, 2004, the IRS notified Whorley that the Special Use Valuation had been denied, and she would be liable for an additional $573,474.00 in taxes.

Based on this designated evidence, it is clear that Whorley's cause of action accrued on April 12, 2004. At that moment, she discovered the estate had sustained a loss and ascertainable damage had occurred. Whorley filed her Complaint on April 5, 2005, well within the two-year statute of limitations. We conclude that Whorley's claim is not time-barred.

### B. *Standing*

 Next, First Farmers takes issue with the trial court's determination that Whorley has standing to bring the instant cause. In its attempt to persuade this court to reverse the trial court's conclusion, First Farmers' argument encompasses both the guardianship statute and probate code provisions. First Farmers commences by asserting that the alleged breach of fiduciary duty coincided with its status as guardian of Zehring's estate. At that point, First Farmers maintains it only had a duty towards its ward, Zehring, and not to Zehring's potential heir, Whorley. As such, Whorley has no standing. Next, First Farmers notes that upon Zehring's death, the breach of duty claim passed on to the estate. When a claim belongs to the estate, only the personal representative, with certain exceptions provided for in the probate code, can institute the cause of action. Thus, First Farmers contends that, Whorley, as heir to the estate, cannot bring the claim in her own name. In closing, First Farmers asserts that Whorley cannot take advantage of the probate code's provisions to reopen the estate as she failed to follow the proper procedures included in I.C. § 29–1–13–16.

 Initially, we agree with First Farmers that Whorley does not have standing to file a claim in her own name based on First Farmers' duties as guardian of Zehring's estate. It is well established that during the guardianship, any neglect of duty or fraudulent conduct by the guardian herein is a private wrong against the ward. *State ex. rel. Botkin v.*

*Leffler*, 232 Ind. 541, 114 N.E.2d 804, 806 (1953). As such, only Zehring or a person filing on his behalf could bring a claim against First Farmers during the duration of the guardianship. However, Zehring passed away prior to the termination of First Farmers' guardianship. Any claim that might exist at that point against the guardian would have passed to Zehring's estate. *See* I.C. § 29–1–13–3 (a personal representative shall have full power to maintain any suit in any court of competent jurisdiction ... for any demand of whatever nature due the decedent or his estate).

Turning to First Farmers' arguments against standing under the probate code, we recognize that its entire analysis rests on this court's opinion in *Inlow v. Henderson, Daily, Withrow & DeVoe*, 787 N.E.2d 385 (Ind.Ct.App.2003), *reh'g denied, trans. denied.* In *Inlow*, the Inlow children brought claims of negligence, intermeddling and legal malpractice against the law firm of Henderson, Daily, Withrow & DeVoe, who provided legal services to the personal representative of the estate. *Id.* at 389. They asserted · that these claims for harm resulted in a diminished value of the estate. *Id.* Despite the ongoing administration of the estate, the Inlow children asserted standing to bring these claims because they held title to estate property even though the personal representative held possession of estate property until the administration of the estate would be complete. *Id.* at 390. In other words, the Inlow children claimed authority independent of the personal representative to maintain a suit while the estate went through probate administration. *Id.*

Based on our analysis of the text, structure, history, and purpose of Indiana's probate law, we disagreed with the Inlow children. We found that the probate code granted the personal representative com-plete authority to maintain any suit for any demand due the decedent or the estate. *Id.* at 391. While we acknowledged the plenary authority of the personal representative to collect and manage the assets of an estate, we also observed that a few specifically circumscribed mechanisms in the probate code allowed for the intervention of heirs and creditors into the administration of the estate. *Id.* at 392. · When an heir believes the personal representative is neglecting his duty to the detriment of the estate, the heir must follow the procedures of the probate code to rectify the problem. *Id.* at 393–94. That is, the heir may seek the removal of the personal representative altogether, petition for the collection of indebtedness and the appointment of a special administrator if necessary, or sue the personal representative for loss to the estate. *Id.* During administration, the heir, however, may not maintain a suit independent of the personal representative and without probate court authority. *Id.* Accordingly, we concluded that the Inlow children could not maintain a suit against a third party independent of the personal representative. *Id.* at 396.

Nevertheless, we find *Inlow* to be inapposite to the case before us. Whereas the action in the Inlow case occurred during the administration of the probate estate, here, the designated evidence clearly indicates that the probate estate had closed at the time Whorley's cause of action accrued. As such, the mechanisms under the probate code allowing an heir to the estate to pursue collection of an indebtedness in lieu of the personal representative were no longer available to Whorley.

According to our supreme court, "[i]n order to invoke a court's jurisdiction, a plaintiff must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sus-

taining, some direct injury as a result of the conduct at issue." *Hammes v. Brumley*, 659 N.E.2d 1021, 1029–30 (Ind.1995), *reh'g denied* (quoting *Higgins v. Hale*, 476 N.E.2d 95, 101 (Ind.1985)). Thus, for a plaintiff to have standing his interest "must be a present, substantial interest, as distinguished from a mere expectancy or future contingent interest." *Inlow*, 787 N.E.2d at 395.

Here, as the probate estate had closed prior to the cause accruing, Whorley was no longer "an expectant heir [who] cannot maintain an action for the enforcement or adjudication of a right in the property the heir may subsequently inherit." *See* I.C. § 29–1–7–23. Instead, Whorley became the primary beneficiary of Zehring's estate: she had received most assets from the estate, and being the sole residuary beneficiary, will suffer any damages that may result from this cause of action. In this light, it is clear that Whorley sustained a direct injury as a result of First Farmers' alleged breach of fiduciary duty, a claim which became part of the probate estate upon Zehring's passing and which passed to Whorley upon closing the probate estate. Specifically, First Farmers' decision to convert the farmland to cash rent rendered the farmland ineligible for Special Use Valuation and resulted in an additional tax liability to Zehring's estate in the amount of $573,474.00. In the absence of this alleged breach of duty, Whorley would have inherited $573,474.00 more than she did. Therefore, we conclude that Whorley demonstrated a personal stake in the outcome of the lawsuit and showed that she has sustained a direct injury. *See Hammes*, 659 N.E.2d at 1029–30. Thus, we agree with the trial court and find that Whorley has standing to bring the suit.

### III. *Grant of Whorley's Motion for Partial Summary Judgment*

Besides challenging the trial court's denial of its motion for summary judgment, First Farmers also contests the trial court's grant of Whorley's motion for partial summary judgment. By granting Whorley's motion, the trial court in effect ruled that First Farmers, as guardian of Zehring's property, had a duty to consider the tax consequences on Zehring's estate in its decision to convert the farmland to cash rent. In response, First Farmers' main argument is an attempt to refute that guardians have a duty to consider the tax consequences on a protected person's estate; rather, it contends that its only duty was to consider the tax considerations which affected the decedent's property during his lifetime. We are not persuaded.

Indiana Code section 29–3–9–4, referred to by our supreme court as Indiana's guardianship estate planning statute, provides

(a) Upon petition of the guardian (other than a temporary guardian) or any other person as approved by the court, and after notice to such persons as the court may direct, the court may, after hearing and by order, authorize the guardian to apply or dispose of the principal or income of the estate of the protected person that the court determines to be in excess of that likely to be required for the protected person's future support or for the future support of the protected person's dependents during the lifetime of the protected person, in order to carry out the estate planning that the court determined to be appropriate for the purposes of minimizing current and prospective income, estate, or other taxes. The court may accordingly authorize the guardian to make gifts, outright or in trust, on behalf of the protected person to or for the benefit of the prospective legatees, devisees, or heirs, including any person serving as the protected per-

son's guardian, or to other individuals or charities, *to whom or in which it is* shown that the protected person had an interest. In addition, the court may also authorize the guardian to:

(1) apply or dispose of the excess principal *or income for any other pur*pose the court decides is in the best interests of the protected person or the protected person's property, spouse, or family;

(2) exercise or waive the right of the protected person to renounce or disclaim any interest in whole or in part devolving by testate or intestate succession or by *inter vivos* transfer, including the right of the protected person to surrender the right to revoke a revocable trust; or

(3) exercise or release any power of appointment that is vested in the protected person.

(b) In a hearing upon a petition filed under subsection (a), the court shall determine whether the planned disposition, renunciation, disclaimer, release, or exercise is consistent with the apparent intention of the protected person, which determination shall be made on the basis of evidence as to the declarations, practices, or conduct of the protected person or, in the absence of that type of evidence, upon the court's determination as to what a reasonable and prudent person would do under the same or similar circumstances as are shown by the evidence presented to the court.

(c) The guardian may examine the will of the protected person.

*See In re Guardianship of E.N.*, 877 N.E.2d 795, 798 (Ind.2007).

■ In its recent opinion of *In re Guardianship of E.N.*, 877 N.E.2d at 798, our supreme court interpreted this statute by commencing with the general observation that statutorily "the guardian has power to conduct the protected person's affairs." *Id.* The court continued by specifying that "Indiana Code section 29–3–9–4 ... authorizes the guardian to take steps directed to estate planning for the protected person." *Id.* As such, a guardian may dispose of the protected person's "principal or income ... in excess of that likely to be required for the protected person's future support." *Id.* The *E.N.* court further analyzed that "[e]xcess principal or income may be disposed of (1) to minimize the protected person's income or estate tax liability and (2) 'for any other purpose' when a disposition is in the best interests of the protected person or his or her property, spouse, or family." Additionally, the court acknowledged that the statute's principal focus is on minimizing estate and inheritance taxes. *Id.* at 800. Thus, based on our supreme court's recent pronouncement in this area, it is clear that a guardian's duties include estate planning for its protected person, while mindful of the best interests of his ward, spouse or family.[2]

---

**2.** In a related argument, Whorley claims that based on I.C. § 29–3–8–3, First Farmers was required to "observe the standards of care and conduct applicable to trustees." Thus, Whorley argues that as guardianship statute incorporated the trusteeship provisions, First Farmer was obliged to comply with the dictates of the Prudent Investor Rule under the trust provisions which include consideration of "the expected tax consequences of investment decisions or strategies." *See* I.C. §§ 30–

4–3.5–1; 30–4–3.5–2(c)(3). There is little authority on the application of the Prudent Investor Rule to assets that are something other than funds to be invested and managed. In that sense, we echo this court's hesitation in *Goodwine v. Goodwine*, 819 N.E.2d 824, 831 (Ind.Ct.App.2004), that the fit of the Prudent Investor Rule with farmland is not a comfortable one. Nonetheless, as we find that First Farmers incurred a duty to plan the protected

The designated evidence reflects that prior to the fall of 2000, Zehring's farmland was incorporated in a modified share crop arrangement, with Zehring as owner-operator. It was understood by Zehring and Whorley that this modified share crop arrangement allowed the farmland to be eligible for Special Use Valuation, which would result in a beneficial tax rate. In the fall of 2000, after First Farmers' appointment as guardian over Zehring's real estate, Custer advised Zehring and Whorley to convert the modified share crop agreement to a cash rent arrangement. During this meeting, he elaborated on the benefits of a cash rent conversion, and considered tax related issues. At the same time, Custer shared his concern that staying with the modified share crop arrangement would result in high guardianship fees as the arrangement would require hands-on participation from First Farmers. He estimated that such oversight would amount to guardianship fees in excess of $100,000 per year. In its designated evidence First Farmers now also concedes that Custer did not inform Zehring or the personal guardians that the decision to cash rent the farmland would render the estate ineligible for Special Use Valuation or have any additional tax consequences for Zehring's estate. However, it also designated Custer's affidavit, testifying that, at the time he gave this advice, he did not believe the farmland qualified for Special Use Valuation.[3] To support Custer's statement, First Farmers points to the terms of the modified share crop arrangement. Besides Whorley's affidavit, enunciating her belief that the farmland qualified for the Special Use Valuation, Custer's affidavit to the contrary, and the terms of the arrangement, no other evidence is designated to prove or refute the application of the Special Use Valuation.

Based on the evidence before us, we find that there is a genuine issue of material fact whether First Farmers breached its duty as guardian. It is undisputed that in restructuring Zehring's estate, First Farmers' main consideration as guardian should have revolved around minimizing the estate's tax implications. While First Farmers conceded that it failed to investigate the farmland's qualification for Special Use Valuation under a cash rent arrangement, the application of the Special Use Valuation on the modified share crop arrangement in the first place is disputed. If the Special Use Valuation was inapplicable on the modified share crop arrangement to begin with, First Farmers' inattentiveness towards Zehring's estate planning might result in harmless error. On the other hand, if the beneficial tax rate was applicable on the

---

person's estate under the guardianship statute, we need not decide this issue today.

3. Whorley contends that First Farmers now for the first time on appeal raises the issue as to whether the farmland was even eligible for Special Use Valuation prior to the conversion to cash rent. Even though First Farmers had designated evidence to this effect, it did not make the argument before the trial court. Generally, a party may not raise an issue on appeal that was not raised in the trial court. *Fortmeyer v. Summit Bank*, 565 N.E.2d 1118, 1120 (Ind.Ct.App.1991). This rule also applies to summary judgment proceedings. *Id.* Nevertheless, in *United Farm Bureau Mut.*

*Ins. Co. v. Lowe*, 583 N.E.2d 164, 168 (Ind.Ct. App.1991), *trans. denied*, we stated that a party who raises a new issue for the first time on appeal does not necessarily waive that claim if the opposing party had unequivocal notice of the existence of the issue and an opportunity to defend against it. Here, we conclude Whorley had notice of the existence of the issue as First Farmers had designated Custer's affidavit in its designated evidence. The affidavit unambiguously states "[a]t the time the decision to cash rent the farm land was made, I did not believe that [Zehring's] farmland would have qualified for special use valuation by the IRS." (Appellant's App. p. 95).

modified share crop arrangement, First Farmers' inconsideration of the tax implication by converting to cash rent has to be balanced with the increased guardianship fees if Zehring had remained with the modified share crop arrangement to reach a conclusion as which land structure was in Zehring's best interests.[4] Accordingly, as a genuine issue of material fact exists, we determine that the trial court erred by granting Whorley's motion for partial summary judgment.

## CONCLUSION

Based on the foregoing, we find that the trial court properly denied First Farmers' motion for summary judgment. However, we conclude that the trial court erred by granting Whorley's motion for partial summary judgment.

Affirmed in part, reversed in part, and remanded for further proceedings.

BAKER, C.J., and ROBB, J., concur.

4. In its brief, First Farmers focuses on I.C. §§ 29–3–11–2(b); 29–3–11–4 providing civil immunity for guardians for certain actions or omissions done in good faith or in the absence of gross misconduct. However, as we determine that it is unclear whether First Farmers breached its duty under the guardianship statute, we prefer to leave this issue for another day.