

FILED

Oct 18 2016, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Aaron T. Craft
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Andrew B. Miller
Jacob M. O'Brien
Starr Austen & Miller, LLP
Logansport, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana *ex rel.* Indiana Department of Transportation, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Joshua Dehaven and FBi Buildings, Inc., <br><br> *Appellees-Defendants.* | October 18, 2016 <br><br> Court of Appeals Case No. 37A05-1603-CC-648 <br><br> Appeal from the Jasper Circuit Court <br><br> The Honorable John D. Potter, Judge <br><br> Trial Court Cause No. 37C01-1311-CC-863 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Plaintiff, State of Indiana, ex rel. Indiana Department of Transportation (INDOT), appeals the trial court's denial of its motion for summary judgment in favor of Appellees-Defendants, Joshua DeHaven (DeHaven) and FBi Buildings, Inc. (FBi Buildings) (collectively, Appellees).

We affirm.

## ISSUE

INDOT raises two issues on appeal, one of which we find dispositive and which we restate as: Whether INDOT is entitled to recover, as a matter of law, the actual cost incurred to repair the bridge after DeHaven struck it with his trailer.

## FACTS AND PROCEDURAL HISTORY

On the afternoon of August 25, 2011, DeHaven, an employee of FBi Buildings, was driving southbound on I-65 in a 1999 Freightliner. He had just delivered some cargo in Remington, Indiana, which had required him to put the crane on the back of the Freightliner in the upright position. After the cargo was unloaded, DeHaven forgot to lower the crane to its original, resting position. He did not realize his mistake until the upright crane collided into the 1800 South overpass bridge in Jasper County, around mile marker 200, as he was driving down the interstate. The collision damaged the bridge and broke the crane into two pieces. The impact left black marks on the bridge and bent some

support barriers. An INDOT inspector was on the scene almost immediately to secure the continued stability and safety of the bridge. Within twenty-four hours of the accident, INDOT's bridge rehabilitation officer, George Snyder (Snyder), inspected and evaluated the damage to the bridge. Snyder concluded that the bridge had sustained "typical" damage, which did not require it to be closed and did not compromise its structural integrity. (Appellant's App. p. 119). He estimated a reasonable cost to repair the bridge.

[5] On November 4, 2011, INDOT sent DeHaven an invoice for $75,198.82, which incorporated Snyder's opinions and constituted a preliminary estimate of the amount INDOT would incur to repair the damage to the bridge. Payment of the invoice was "due immediately upon receipt." (Appellant's App. p. 97). INDOT concedes that if the invoice had been paid, DeHaven would not have incurred any further liability even if the actual repair cost would have exceeded the invoiced amount.

[6] Appellees hired Elite Consulting Services, Inc. (Elite) to inspect the damage to the bridge and to estimate the cost of repairs. Elite communicated to INDOT its concern that the invoice was excessive. After conducting its own assessment of the damages, Elite opined that the actual cost should be between $15,000 and $20,000. Taking into account Elite's concerns, INDOT sent Appellees a second, adjusted invoice in the amount $58,712.38 on June 4, 2012. Still finding the amount of repairs excessive, Appellees and Elite decided "to wait until the repair project went to bid in hopes that this would produce an amount

more reasonably reflective of the value of the necessary costs of repair." (Appellant's App. p. 153).

[7] In early 2013, the project proceeded through the statutory bidding process in accordance with Ind. Code § 8-23-9-1 *et seq*. Prior to bidding, INDOT's engineers had estimated the repair cost for the project to be around $64,000. On February 6, 2013, at the conclusion of the bidding term, INDOT received two bids from independent third-party contractors. Civil Construction, Inc., bid $77,307.61 but was disqualified because it had failed to include a performance bond and power-of-attorney letter as required by law. *See* I.C. § 8-23-9-8. The only qualified bid was entered by Pioneer Associates, Inc. (Pioneer) for an amount of $132,200.80. INDOT accepted Pioneer's bid and awarded it the contract for the bridge repair.

[8] Pioneer completed the bridge repairs at some point in the spring of 2013, with a final cost of $131,421.80. In addition to this repair cost, INDOT incurred approximately $200 in additional administrative charges. On August 1, 2013, INDOT sent a third invoice to Appellees for $131,623.05, which Appellees refused to pay.

[9] On November 21, 2013, INDOT filed an amended Complaint against DeHaven sounding in negligence and against FBi Buildings based on vicarious liability. On May 22, 2014, INDOT filed its motion for summary judgment, along with an accompanying memorandum of law and designation of evidence. On September 17, 2014, Appellees filed their brief in opposition, along with

their designated evidence. After mediation failed, the trial court conducted a hearing on INDOT's motion for summary judgment on December 18, 2015. On January 26, 2016, the trial court issued its Order, denying summary judgment to INDOT on the amount of damages.

[10] On February 24, 2016, INDOT requested the trial court to certify its Order for interlocutory appeal, which was granted two days later. On April 15, 2016, this court accepted jurisdiction over the interlocutory appeal.

[11] Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[12] Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

[13] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we

must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

[14] We observe that in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale and facilitate appellate review. *Id*.

## II. *Damages*

[15] INDOT contends that the trial court erred when it denied its summary judgment on damages. It asserts that as a tort victim, INDOT must be restored to the position it held prior to DeHaven's negligence and, therefore, it is entitled to recover the actual cost of repairs, which constitute reasonable damages as a

matter of law. However, Appellees respond that once INDOT submitted evidence of the costs to repair the damage to the bridge, Appellees "were afforded an opportunity to designate evidence establishing that the value of the damage sustained was less than the cost evidence tendered by [INDOT], . . . by demonstrating that INDOT had failed to reasonably mitigate its damages." (Appellees' Br. p. 11).

[16] To support their respective arguments, both parties relied on *City of Marion v. Taylor*, 785 N.E.2d 663, 664 (Ind. Ct. App. 2003), *trans. denied*, where Taylor disputed the cost of the actual damage to the City's stoplight, incurred as a result of his negligence. Explaining the different damages and cost measurements, this court concluded that:

> When measuring a tortious injury to property attached to real estate, Indiana law applies two measures of damages. In the case of permanent injury to property, the measure of damages is the value of property before the injury. Damages for temporary or repairable injury are measured by the cost of the repair. After the plaintiff establishes a prima facie case for damages, the burden then shifts to the defendant. A prima facie case is established when the costs of reparation are admitted into evidence.

*Id*. at 665 (internal citations omitted). In applying these principles to the situation before it, this court noted that the City of Marion introduced into evidence an invoice for repairs to the stoplight, claiming the damage was temporary. *Id*. Finding that the City had established a prima facie case for damages, the court concluded that "[a]s soon as the City's invoice was accepted

into evidence by the trial judge, the burden of proof shifted to Taylor to establish that the damages were less than the costs submitted by the City." *Id.*

[17] Likewise, here, as soon as INDOT entered its final invoice into evidence, the burden shifted to Appellees to establish that the costs of $131,421.80, as determined by Pioneer, were higher than the damages incurred. To carry their burden, Appellees designated Elite's estimated cost of $20,000 and INDOT's engineers' estimated repair cost of $64,000, as well as INDOT's first two invoices. Therefore, the trial court concluded that a genuine issue of material fact existed and denied INDOT's motion for summary judgment on the damages.

[18] While we agree with INDOT that Appellees must take their victim as they find it, we also point out that a victim is under a duty to mitigate damages. *See Fisher v. Heymann*, 12 N.E.3d 867, 871 (Ind. 2014) (noting that the duty to mitigate damages is a common law duty that requires a non-breaching party to make a reasonable effort to act in such a manner as to decrease the damages caused by the breach). Statutory requirements mandated INDOT to let the repair work after proceeding through a bidding process pursuant to I.C. § 8-23-9-1. In accordance with this statute, INDOT had the discretion to "reject any and all proposals for cause." I.C. § 8-23-9-2. At the same time,

> the department may accept a proposal and award a contract . . . if:
>
> (1) The lowest responsive and qualified bid is:

(A) Less than one million dollars ($1,000,000);

(B) One (1) of four (4) or more bids received by the department for the contract; or

(C) Not more than fifteen percent (15%) above the estimated cost of the project.

I.C. § 8-23-9-4. Although the statute is phrased in discretionary language, the sole successful bid submitted by Pioneer and accepted by INDOT represented at least twice the project cost estimated by INDOT's engineers. Thus, by accepting a bid through a statutory bidding process, and correlating this bid with the damages that were incurred by Appellees due to their negligence without granting Appellees the opportunity to dispute the reasonableness of these costs, INDOT is in effect attempting to insulate itself from having to mitigate its damages. We cannot agree with INDOT's interpretation. Rather, by including language—albeit discretionary—that multiple bids may be received, or, as here, in case of less than four bids received, the winning bid should not be more than 15% above the department's estimated cost, the legislature incorporated a safeguard against a possible excessive expenditure of taxpayer's money. Accordingly, INDOT's suggested interpretation does not find any basis in *Taylor* or in the statutory bidding process.

## CONCLUSION

[19] Based on the foregoing, we affirm the trial court's denial of INDOT's motion for summary judgment.

Affirmed.

Bailey, J. and Barnes, J. concur