## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2018, 7:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven W. Etzler
Malloy Etzler & Lawhead, PC
Highland, Indiana

ATTORNEY FOR APPELLEE

Renee J. Mortimer
Scott B. Cockrum
Schererville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Scott Ehrlich,

*Appellant-Plaintiff,*

v.

FME, Inc.,

*Appellee-Defendant.*

October 24, 2018

Court of Appeals Case No.
18A-CT-989

Appeal from the Lake Superior
Court

The Honorable John M. Sedia,
Judge

Trial Court Cause No.
45D01-1403-CT-73

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Scott Ehrlich (Ehrlich), appeals the trial court's summary judgment in favor of Appellee-Defendant, FME, Inc. (FME), on Ehrlich's slip-and-fall claim.

We affirm.

# ISSUE

Ehrlich presents us with two issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred when it concluded that there was no genuine issue of material fact that FME was negligent in the performance of its duty.

# FACTS AND PROCEDURAL HISTORY

On September 27, 2012, Ehrlich was an employee of Akal Security and was working at the United States Courthouse in Hammond, Indiana. At approximately 11:55 a.m., Ehrlich went to the third-floor men's restroom. While approaching the sink area, Ehrlich fell down onto the floor, sustaining injuries to his neck, back, and shoulder. Ehrlich had not noticed "any substance under [his] feet" and had no personal knowledge of water on the restroom floor. (Appellant's App. Vol. II, p. 214).

David Dabertin (Dabertin), a local attorney, was present in the restroom at the time of Ehrlich's fall. Dabertin noticed that Ehrlich was laying about three to four feet from the sink. Checking the floor, he did not see "anything" on the

floor, "no water," and "no substance of any kind." (Appellee's App. Vol. II, p. 58). Dabertin confirmed that he did not "see anything on the floor, no grease, nothing . . . . There was nothing there." (Appellee's App. Vol. II, pp. 59-60). After making sure Ehrlich was fine, Dabertin informed the courthouse marshals.

[6] Greg Mucha (Mucha), a security officer with DECO Security, the company responsible for patrolling the courthouse, arrived in the restroom after being alerted of the incident. Although Mucha was not in the restroom at the time of the fall, he completed the incident report noting that "[i]t appeared that [Ehrlich] slipped and fell in a puddle of water on the floor in the men's washroom on the 3rd floor, north side of the building." (Appellee's App. Vol. II, p. 77). In his deposition, Mucha stated that he "believe[d]" the floor "was damp" and it was "[p]robably a wet floor." (Appellant's App. Vol. III, p. 34). Pete Nelson (Nelson), a colleague of Ehrlich, also arrived on the scene and noted "a black mark on the floor in the relative area of his feet." (Appellee's App. Vol. II, p. 99). He cautioned that he was unaware whether "that came from [Ehrlich] or somebody else. That does happen in this building; people shuffle their feet and certain types of soles will leave a black mark." (Appellee's App. Vol. II, p. 99). However, Mucha testified in his deposition that Nelson "did say there was a puddle of water on the floor." (Appellant's App. Vol. III, p. 35).

[7] At the time of the incident, FME was retained by the General Services Administration (GSA), the division of the United States Government that runs

its buildings, to perform certain cleaning and janitorial services, including the cleaning of the third-floor men's restroom. The contract between the parties required the implementation of a quality control plan and also required FME to perform frequent checks of the courthouse and identify any hazardous conditions that could develop. At the time of the incident, the contract's daily cleaning schedule reflected that an FME employee had cleaned the restroom between 8:15 and 9:00 a.m. No evidence was designated that the restroom was checked by FME later that morning.

[8] On March 24, 2014, Ehrlich filed his Complaint against FME, sounding in negligence for failing to properly maintain the premises and based on a third-party beneficiary theory that FME failed to perform the janitorial services pursuant to its contract with GSA. On January 10, 2018, FME filed its motion for summary judgment, memorandum of law, and designation of evidence. On February 23, 2018, Ehrlich responded to FME's summary judgment motion with a memorandum of law and designation of evidence. On April 4, 2018, after a hearing, the trial court issued its Order, granting summary judgment to FME, concluding in pertinent part:

> Here, although Ehrlich satisfies the initial foreseeability analysis [of premises liability], Attorney Dabertin's testimony establishes a *prima facie* showing that FME has met the *Burrell* [] analysis. In response, Ehrlich has designated a report showing the presence of water in the restroom and testimony that the usual practice under the GSA contract was for FME not only to clean the restroom once daily, but also to clean and/or inspect it twice a day. However, in reviewing Ehrlich's designated evidence, and drawing all reasonable inferences in his favor, the [c]ourt cannot

say that there is any genuine issue of material fact to present to a finder of fact: the report was hearsay based upon hearsay, and when its author, [Mucha], and the witness referred to in the report, [Nelson], were deposed, neither could recall seeing any water on the restroom floor where Ehrlich fell. Ehrlich himself testified in his deposition that he did not see water on the floor before or after he fell.

Even if the [c]ourt were to forego the *Burrell* [] analysis in the context of Ehrlich's third-party beneficiary claim, the uncontroverted testimony of Dabertin, Mucha and Nelson demonstrates that there is no material issue of fact that no water nor any other substance was on the floor of the third-floor men's restroom of the courthouse where Ehrlich fell. This would obviate any requirement in FME's contract that FME identify a hazardous condition where none existed.

(Appellant's App. Vol. II, p. 14).

[9] Ehrlich now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

[10] In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-

moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

[11] We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Analysis*

[12]     Denying that he had sued FME on a premises liability theory, Ehrlich contends that the trial court erred when it found that no genuine issue of material fact existed with respect to Ehrlich's third-party beneficiary contract claim.

[13]     Third-party beneficiaries may directly enforce a contract. *St. Paul Fire & Marine Ins. Co. v. Pearson Const. Co.*, 547 N.E.2d 853, 856 (Ind. Ct. App. 1989). A third-party beneficiary contract exists when (1) the parties intend to benefit a third party; (2) the contract imposes a duty on one of the parties in favor of the third party; and (3) the performance of the terms of the contract render a direct benefit to the third party intended by the parties to the contract. *Id.* A party may also use such status as the basis of the duty in a negligence context. *Id.* at 857. In a contract for work, there is an implied duty to do the work skillfully, carefully, and in a workmanlike manner. *Id.* Negligent failure to do so is a tort, as well as a breach of contract. *Id.*

[14]     Defining himself as the third-party beneficiary under the contract, Ehrlich maintains that FME failed to identify the hazardous conditions that caused his fall in the restroom, pursuant to the terms of the contract. Without concluding whether Ehrlich can be characterized as a third-party beneficiary under the contract, we find that Ehrlich's claim fails.

[15]     Absent factual evidence, negligence cannot be supported by an inferred chain of events and inferential speculation alone cannot establish negligence. *Wright Corp. v. Quack*, 526 N.E.2d 216, 218 (Ind. Ct. App. 1988), *trans. denied*. In *Hayden v. Paragon Steakhouse*, 731 N.E.2d 456, 457 (Ind. Ct. App. 2000),

Hayden slipped and fell shortly after he exited the restaurant to retrieve his car. There were no witnesses to his fall. *Id*. at 458. Although he alleged in his complaint that he slipped and fell on snow and ice on Paragon's property, he testified in his deposition that he did not see any snow on the pavement where he fell. *Id*. He noted that it was his "belief" that he slipped on ice and that he "suspects" he slipped on "something." *Id*. Because Hayden was required to come forward with specific facts that demonstrate the existence of a negligent condition that caused his fall and he cannot rely on speculation and conjecture, we granted summary judgment to Paragon as a matter of law. *Id*. at 458-59.

[16]     Likewise, here, there is no designated evidence that establishes water was actually on the floor in the men's restroom. Ehrlich testified that he did not know what had caused his fall in the restroom as he did not notice any substance under his feet or personally noticed any water on the floor. The only other witness present in the restroom, Dabertin, testified that he checked the floor and did not see anything—"no water" and "no substance of any kind." (Appellee's App. Vol. II, p. 58). Dabertin concluded that "[t]here was nothing there." (Appellee's App. Vol. II p. 60). Nelson, Ehrlich's colleague who arrived after the incident, only referred to "a black mark on the floor in the relative area of [Ehrlich's] feet," but he was unaware whether the mark "came from [Ehrlich] or somebody else." (Appellee's App. Vol. II, p. 99). Mucha, who was not in the restroom and did not personally witness the fall, learned of the incident from other employees who did not witness the fall either, and described the incident as appearing that Ehrlich slipped and fell in a puddle of

water in the men's restroom.  However, Mucha's conclusion is "sheer speculation." *Wright Corp*., 526 N.E.2d at 218 (With no witness present and the victim unable to establish the cause of her fall, we determined that the post-incident report offered unsubstantiated speculation as to the cause of the fall.) Ehrlich's reliance on Mucha's determination that he "believed[d]" the floor was "[p]robably" wet is an attempt to impose negligence on FME by mere guess and conjecture.  (Appellant's App. Vol. III, p. 34).  As it cannot be established that water was present on the floor in the men's restroom, we cannot say that FME might have been negligent under the terms of its contract.  "Falling and injuring one's self proves nothing.  Such happenings are commonplace wherever humans go." *Ogden Estate v. Decatur Co. Hospital*, 509 N.E.2d 901, 903 (Ind. Ct. App. 1987), *reh'g denied, trans. denied*.  While we are sympathetic to Ehrlich's plight, considering the designated evidence, we cannot find that there is a genuine material issue of fact that FME was negligent in the performance of its contract.

## CONCLUSION

[17] Based on the foregoing, we conclude that there is no genuine issue of material fact that FME was negligent in the performance of its duty.

[18] Affirmed.

[19] Vaidik, C. J. and Kirsch, J. concur