**FOR PUBLICATION**

ATTORNEYS FOR APPELLANT:

**HAMISH S. COHEN**
**KYLE W. LeCLERE**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**ELIZABETH ZINK-PEARSON**
Pearson & Bernard PSC
Edgewood, Kentucky

FILED

Aug 28 2014, 10:16 am

*[signature]*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NIGHTINGALE HOME HEALTHCARE, INC., | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1403-PL-121 |
| | ) | |
| CAREY HELMUTH and PHYSIOCARE HOME HEALTHCARE, LLC, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable William J. Hughes, Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D03-1207-PL-7011

**August 28, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Plaintiff, Nightingale Home Healthcare, Inc. (Nightingale), appeals the trial court's summary judgment in favor of Appellees-Defendents, Carey Helmuth (Helmuth) and Physiocare Home Healthcare, LLC (Physiocare), concluding that Helmuth's ten-day break in employment with Nightingale served as the starting point of his Limited Non-Competition and Non-Disclosure Agreement (Non-Compete Agreement).

We affirm.

## ISSUE

Nightingale raises three issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court properly found, as a matter of law, that a ten-day break in employment more than two years ago marked the commencement of Helmuth's Non-Compete Agreement.

## FACTS AND PROCEDURAL HISTORY

Nightingale is an Indiana corporation engaged in the business of providing in-home healthcare, hospice care, and private duty care to Indiana residents. On January 24, 2008, Helmuth commenced his employment with Nightingale as a patient advocate, promoting Nightingale's home healthcare services in the community and to facilities and physicians who were in a position to refer patients. As a condition of his employment, Helmuth was required to enter into a Non-Compete Agreement, which protects Nightingale's proprietary and confidential information and geographically restricts

2

Helmuth's ability to unfairly compete with Nightingale for a period of two years after separation from the company. Every Nightingale employee signs a Non-Compete Agreement, and it is known and understood by all employees that such agreements are an essential term and condition of their employment.

On October 16, 2009, Nightingale terminated Helmuth's employment for "substandard work" and "violation of company policies." (Appellant's App. p. 250). After his termination from Nightingale, Helmuth ceased to receive compensation, benefits, or perform tasks for the company. He began the process to collect unemployment compensation benefits. However, based on conversations between Nightingale and Helmuth following his termination, Nightingale offered "to revoke his termination" and have him "return to work in his prior position subject to the [Non-Compete Agreement] and the prior terms and conditions of his employment." (Appellant's App. p. 186). On October 26, 2009, Nightingale re-hired Helmuth. Helmuth was never asked to, nor did he sign a new Non-Compete Agreement.

Helmuth's employment with Nightingale ended on March 5, 2012. Almost immediately thereafter, Helmuth accepted employment with Physiocare as a patient advocate, a similar position to the one he held during his employment with Nightingale and in the similar geographical market he previously worked in.

On July 9, 2012, Nightingale filed its Complaint for damages, preliminary injunction, and permanent injunction, alleging Helmuth breached the Non-Compete Agreement. On September 26, 2012, Helmuth and Physiocare filed a motion for summary judgment asserting that the Non-Compete Agreement expired in October of

3

2011 and requesting a summary disposition of Nightingale's Complaint in its entirety. The following month, on October 29, 2012, Nightingale filed its cross-motion for partial summary judgment contending Helmuth breached the Non-Compete Agreement. On July 9, 2013, the trial court conducted a hearing on the parties' motions and issued its Order on July 16, 2013, granting Helmuth and Physiocare summary judgment and denying Nightingale's motion for partial summary judgment. The trial court found, in pertinent part:

> 3. Nightingale terminated Helmuth's employment on or about October 16, 2009.
>
> 4. On or about October 26, 2009, Nightingale offered to reemploy Helmuth. Helmuth accepted re-employment with Nightingale on or about October 26, 2009, ten (10) days following his termination.
>
> 5. Helmuth's employment with Nightingale was not "continuing" due to the ten (10) days of unemployment, during which time he performed no services for Nightingale and received no compensation. Helmuth was terminated by Nightingale and then subsequently rehired.
>
> . . . .
>
> 7. Following his rehire by Nightingale in October 2009, Helmuth never reexecuted the Agreement, nor took any other action to extend the length of the restriction or otherwise take any affirmative act to alter the clearly and unambiguously stated terms of the Agreement.
>
> 8. The time period of the Agreement expired by its express terms two (2) years after Helmuth's termination of employment with Nightingale on October 16th 2009. The restrictions of the Agreement expired on or about October 15th, 2011 and therefore did not restrict Helmuths's employment with Physiocare beginning in May 2012.

(Appellant's App. p. 6). On March 17, 2014, the trial court amended the Order by expressly entering final judgment on all of Nightingale's remaining claims and making the Order final and appealable.

Nightingale now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . . , or if the undisputed facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009).

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. The party appealing the grant of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *Id*. When the defendant is the moving party, the defendant must show that the undisputed facts negate at least one element of the plaintiff's cause of

5

action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim. *Id*. Accordingly, the grant of summary judgment must be reversed if the record discloses an incorrect application of the law to the facts. *Id*.

We observe that, in the present case, the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *Id*. However, such findings offer this court valuable insight into the trial court's rationale for its decision and facilitate appellate review. *Id*.

## II. *Non-Compete Agreement*

Nightingale now contends that the trial court erred, as a matter of law, in issuing summary judgment in favor of Helmuth and Physiocare. Specifically, Nightingale maintains that "[t]he undisputed material facts demonstrate that Helmuth was not terminated in October 2009 because his termination was revoked, and he was rehired pursuant to the existing terms and conditions of his employment arrangement—including the [Non-Compete Agreement]." (Appellant's Br. p. 11).

Indiana courts have generally recognized and respected the freedom to contract. *Pathfinder Commc'ns Corp. v. Macy*, 795 N.E.2d 1103, 1109 (Ind. Ct. App. 2003). However, covenants to not compete are in restraint of trade and are not favored by the law. *Id*. Noncompetition agreements are strictly construed against the employer and are enforced only if reasonable. *Id*. Covenants must be reasonable with respect to the legitimate interests of the employer, restrictions on the employee, and the public interest. *Id.*

6

Here, the Non-Compete Agreement entered into by Helmuth on January 24, 2008, provided, in pertinent part, that:

> For a period of two (2) years after separation from [Nightingale] (regardless of the reason for the separation), Employee shall not: [] (vii) In a competitive capacity, directly or indirectly work for, own, advise, manage, or act as an agent or consultant for or have any business connection or business or employment relationship with any competitor of [Nightingale], wherever located, whereby Employee would be providing services to or in the Restricted Area[.]

> Waiver and Amendments. Failure of [Nightingale] to insist upon strict compliance with any provision of this Agreement shall not operate to be construed as a waiver of any terms, provisions, or rights of [Nightingale] or subsequent breach by Employee. Moreover, no modifications, extensions, amendments, or waivers of this Agreement or any of its provisions shall be binding unless in writing and signed by an executive of [Nightingale].

(Appellant's App. pp. 85, 88).

A non-compete agreement is a quintessential contract and thus the traditional rules of contract interpretation apply. As such, a contract is ambiguous only if reasonable persons would differ as to the meaning of its terms. *Beam v. Wausua Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent. *Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1142 (Ind. Ct. App. 2003). Courts may not construe clear and unambiguous provisions, nor may it add provisions not agreed upon by the parties. *Id.*

Nightingale now contends that even though Helmuth's employment was terminated on October 16, 2009, the termination was revoked and voided within one

7

week, re-instating Helmuth in the same position with his preexisting salary and benefits without having to reapply or submit any paperwork. Thus, Nightingale maintains that the restrictive covenant of the Non-Compete Agreement did not enter into effect until he was terminated in March 2012. In support of its argument, Nightingale relies on *Campbell v. BDP International, Inc*., 2002 WL 31319927 (D.N.J. Sept. 12, 2002), where Campbell resigned from her employment with BDP in November 1999 and was rehired in January 2000. *Id*. at *2. Two years later, BDP terminated her again. *Id*. Campbell argued that she was not subject to an arbitration clause in her original employment because "her break from employment from BDP 'reset' the terms and conditions of her employment." *Id*. at *3. Campbell pointed to the fact that she negotiated a promotion, a raise, and an additional day of vacation time when she returned to BDP after a brief absence, and the "company did not indicate that acceptance of re-employment constituted acceptance of previous agreements with the company." *Id*. The court found in favor of BDP because the parties treated Campbell's departure in 1999 as a continuous employment, evidenced by the fact that Campbell was paid for the ten days she was off BDP's payroll, she was not subject to a new employee's evaluation period, and was immediately entitled to certain benefits not afforded to new employees. *Id*.

However, we find *Campbell* inapposite to the case at hand. First, *Campbell* is an opinion emanating from the United States District Court from the District of New Jersey and therefore, is persuasive at best. Furthermore, unlike non-compete agreements which are disfavored under Indiana law, it is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Sanford v. Castleton Health Care Ctr.,*

8

*LLC*, 813 N.E.2d 411, 417 (Ind. Ct. App. 2004), *trans. denied*. Whereas non-compete agreements are strictly construed against the employer, when construing arbitration agreements, every doubt is to be resolved in favor of arbitration. *Id.* Although both non-compete clauses and arbitration provisions are in essence contractual agreements, they are distinct in nature and purpose and thus are not comparable.

The designated evidence reflects that Nightingale terminated Helmuth on October 16, 2009, for "substandard work" and "violation of company policies." (Appellant's App. p. 250). Helmuth was required to "turn in [his] company laptop, ID badge, office key, company car key, and access to the offices and computers was forbidden and removed[.] [B]ecause of this immediate termination, it was made very clear to [him] that [he] was no longer a Nightingale employee." (Appellant's App. p. 234). Ten days later, Nightingale rehired Helmuth in the same position and with the same remuneration and benefits, with the exception of retirement contributions which "Nightingale refused to [] credit [] for [his] first period of employment." (Appellant's App. p. 92). Also, Nightingale did not pay Helmuth for the ten days in between his two employment terms. It is furthermore undisputed that Helmuth never signed a new Non-Compete Agreement.

Despite Nightingale's characterization of Helmuth's rehire as a revocation and rescission of the previous termination, we find that, based on the evidence, Nightingale's conduct is more properly defined as a separation from the company which was unconditional and intended to operate as a permanent termination of the employment relationship between Nightingale and Helmuth.

Moreover, Nightingale's argument that Helmuth "acquiesced" to the Non-Compete Agreement by returning to work pursuant to the same terms previously agreed upon belies the unambiguous language of the Non-Compete Agreement which unequivocally states that extensions or modifications to the Agreement shall not be binding "unless in writing and signed by an executive of" Nightingale. (Appellant's Reply Br. p. 4) (Appellant's App. p. 88).

Mindful that non-compete agreements are disfavored by law and strictly construed against the employer, we conclude that there is no issue of material fact that Helmuth was indeed separated from Nightingale on October 16, 2009, which marked the starting point of the two-year restrictive period of the Non-Compete Agreement. Absent the execution of a new non-compete agreement on October 26, 2009 or a written extension of the prior Non-Compete Agreement, Helmuth's restrictive period ended on or about October 16, 2011. Therefore, at the time of entering into an employment relationship with Physiocare in May of 2012, Helmuth was no longer bound by the provisions of the Non-Compete Agreement.

## CONCLUSION

Based on the foregoing, we conclude that the trial court properly concluded, as a matter of law, that a ten-day break in employment more than two years ago constituted the commencement of Helmuth's Non-Compete Agreement.

Affirmed.

MATHIAS, J. concurs

CRONE, J. concurs in result without separate opinion

10