## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 12 2017, 10:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Patrick A. Duff | George C. Barnett, Jr. |
| Duff Law, LLC | Barnett Law, LLC |
| Evansville, Indiana | Evansville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Foncannon Tax & Financial Services, LLC, | April 12, 2017 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 82A05-1606-CC-1263 |
| v. | Appeal from the Vanderburgh Superior Court |
| Stephen C. Gubler, P.C., and Stephen C. Gubler, | The Honorable Richard G. D'Amour, Judge |
| *Appellee-Defendant.* | Trial Court Cause No. 82D07-1505-CC-2568 |

**Bailey, Judge.**

# Case Summary

[1] Foncannon Tax & Financial Services, LLC ("Foncannon Services") sued Stephen C. Gubler, P.C. ("the Corporation"), and Stephen C. Gubler, in his individual capacity ("Gubler"), for violation of a covenant not to compete connected to Gubler's sale of the Corporation's assets to Foncannon Services. The trial court granted summary judgment to Gubler and the Corporation. Foncannon Services now appeals.

[2] We reverse and remand.

# Issue

[3] Foncannon Services presents a single issue, which we restate as whether the trial court improvidently granted summary judgment.

# Facts and Procedural History

[4] In 2004, Gubler was nearing retirement, and decided to sell the assets of his accounting practice to Foncannon Services. As part of this transaction, Gubler, on behalf of the Corporation, signed a consulting agreement ("the Agreement") that included a covenant not to compete. The Agreement identified Foncannon Services as "Purchaser," the Corporation as "Consultant Firm," and provided, among other things:

> 1. <u>Consulting Services.</u> During the period that begins on January 3, 2005 and ends on December 31, 2007 or such later

date as may be mutually agreed to by the parties (the "Consulting Period"), Consultant Firm shall consult with and advise Purchaser as to those matters in connection with the Practice as to which Consultant Firm's experience and expertise would be useful and valuable, including, but not limited to, the following: (a) advice and consultation with respect to customer relations and advertising programs; (b) evaluation and development of and advice and consultation with respect to marketing programs and strategies; (c) advice with respect to competitors' products and marketing programs; (d) rendering assistance to Purchaser to maintain its relationships with clients, suppliers and others with whom there have been beneficial relationships; (e) review and consultation in connection with monthly operating statements of Purchaser; (f) review and consultation in connection with annual financial statements of Purchaser; (g) rendering assistance to Purchaser in establishing relationships with new clients; and (b) such other consulting services as Purchaser may reasonably request. All service to be performed by Consultant Firm will be rendered by Stephen C. Gubler.

(Hereinafter "the Consulting Services Provision"). (App'x Vol. 2 at 105.) For these services, the Agreement provided for payment of $4,000 per month on or before the first day of February, March, April, May, and June of each year of the Consulting Period. (App'x Vol. 2 at 106.)

[5] The Agreement included a non-competition and non-solicitation provision that, in relevant part, provided:

> 4. <u>Noncompetition and Nonsolicitation.</u> Stephen C. Gubler covenants and agrees that he will not, during the Consulting Period or at any time within five years thereafter, directly or indirectly, on his own behalf or on behalf of any third party, whether as an agent, employee, employer, officer, director,

shareholder, member, principal, consultant, independent contractor, partner, creditor or in any other capacity:…

(b) induce, cause, solicit, advise or influence any person, business or entity who was a customer of Purchaser during the Consulting Period, or

(c) perform any accounting, tax preparation, or related services within one hundred eighty (180) miles of the Purchaser.

Consultant Firm acknowledges and understands that it is essential and reasonable, in order to protect Purchaser's interests under this Agreement, that Consultant Firm be restricted in the manner described above during the Consulting Period.

(App'x Vol. 2 at 106-107.)  The Agreement also included a provision requiring that modifications to the Agreement be made only in writing.

[6] Gubler, through the Corporation, provided business consulting services to Foncannon Services through 2007.  After that time, Gubler continued to perform work for Foncannon Services.  The nature of that work centered upon tax preparation and advising for clients of Foncannon Services, and payment for these services largely followed the same terms as set out in the Agreement.

[7] Gubler performed work for Foncannon Services into 2014's tax season. Foncannon Services wrote checks both to Gubler personally and to the Corporation through June 2014, and wrote checks to Gubler personally nearly monthly through December 31, 2014.

[8]     During the 2015 tax season, Gubler began to offer his services to elderly clients. Rather than accept payment, Gubler requested that his clients use the money they would have paid in fees and instead donate that money to charitable causes. Gubler was the subject of a media profile sponsored by a tax software company, Intuit Professional Tax. In the profile, Gubler discussed his new charitable venture, which he funded in part from a prize from Intuit Professional Tax. Gubler said that he had decided in April 2014 to retire from practice, but that five months later he invited some of his and the Corporation's former clients over the age of 65 to join him in the venture. Gubler also discussed plans to establish a non-profit tax service for seniors. (App'x Vol. 2 at 183-86.)

[9]     Foncannon Services learned of Gubler's activities, which were conducted under the name of the Corporation. On May 22, 2015, Foncannon Services filed suit, alleging breach of contract, breach of fiduciary duty, tortious interference with a contractual relationship, and fraud against both Gubler and the Corporation. An amended complaint was filed on August 28, 2015.

[10]    On January 5, 2016, Foncannon Services filed a motion seeking preliminary and permanent injunctions against Gubler and the Corporation.

[11]    On January 26, 2016, Gubler and the Corporation filed a motion for summary judgment as to all counts in the complaint.

[12]    On February 29, 2016, a hearing was conducted on the motion for injunctive relief and the motion for summary judgment. On March 7, 2016, the trial court

entered summary judgment for Gubler and the Corporation as to all counts, and denied the motion for injunctive relief as moot.

[13] On April 6, 2016, Foncannon Services filed a motion to correct error. After a hearing, the trial court denied the motion on May 16, 2016.

[14] This appeal ensued.

# Discussion and Decision

[15] Foncannon Services appeals the trial court's denial of a motion to correct error. We review appeals from a court's order on a motion to correct error for an abuse of discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when it errs on a legal matter. *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 230 (Ind. Ct. App. 2010), *trans. denied*.

[16] Underlying the court's order on the motion to correct error is an order for summary judgment. We review a grant of summary judgment *de novo*. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009). Summary judgment is appropriate only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from the facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of the motion for summary judgment is limited to those matters designated to the trial

court. T.R. 56(H); *Mangold*, 756 N.E.2d at 973. We carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Mangold*, 756 N.E.2d at 974.

[17] At summary judgment, Foncannon Services argued that the Consulting Period had been extended. Gubler and the Corporation argued that there had been no extension. The trial court entered summary judgment for Gubler and the Corporation, reasoning that the terms of the Agreement required that there could be no extension of the Consulting Period and, in turn, no extension of the duration of effect of the covenant not to compete without a written modification of the Agreement. Foncannon Services argues that the trial court erred when it thus construed the Agreement.

[18] The appeal, then, initially presents a question of contract interpretation. Neither Foncannon Services nor Gubler and the Corporation argue that the contract is ambiguous. "In interpreting an unambiguous contract, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent." *Nightingale Home Healthcare, Inc. v. Helmuth*, 15 N.E.3d 1080, 1084 (Ind. Ct. App. 2014).

[19] The Consulting Period was defined by the Agreement: "the period that begins on January 3, 2005 and ends on December 31, 2007 or such later date as may be mutually agreed to by the parties." (App'x Vol. 2 at 183.) Foncannon Services argues that Gubler's continued tax preparation and work consulting for

Foncannon Services clients, together with the ongoing payment of money in amount and schedule like that provided for in the Agreement, was an extension of the Consulting Period. Foncannon Services argues that this extension was expressly included by the parties in the Consulting Period definition, and no modification was required to give the extension effect—simply payment and continued work by Gubler. Thus, Foncannon Services argues, the trial court erred when it concluded that any modification of the Agreement was required to extend the Consulting Period and, in turn, the five-year post-Consulting Period term of the covenant not to compete.

[20] We agree that the trial court's interpretation of the Agreement is in error on this point. The Agreement does not, of itself, require a separate writing to continue the Consulting Period, because the language of the Agreement provides for extension of the Consulting Period. Thus, an extension is by the plain language of the agreement not a modification.

[21] Moreover, even if the extension were a modification, a written contract can be modified without a writing, even where the written agreement provides that it may be modified only by means of a written modification. *Skweres v. Diamond Craft Co.*, 512 N.E.2d 217, 220-21 (Ind. Ct. App. 1987). In such cases, "modification of a contract, because it is a contract, requires all the requisite elements of a contract." *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1078, 1085 (Ind. Ct. App. 1991), *trans. denied*.

[22] Even when a trial court has erred, we may affirm the entry of summary judgment on any grounds supported by the designated evidentiary material, so long as there is no question of material fact and the movant is entitled to judgment as a matter of law. *Lacy-McKinney v. Taylor Bean & Whitaker Mortg. Corp.*, 937 N.E.2d 853, 859 (Ind. Ct. App. 2010). We cannot, however, affirm the summary judgment decision here because the question of extension or modification leaves remaining a question of material fact: whether there was a mutual agreement between the parties to extend the Consulting Period or modify the Agreement to create such an extension, and whether the requirements for either extension or modification were satisfied.

[23] The designated evidentiary material, viewed in a light favorable to the nonmovant, indicates the following. Gubler and the Corporation both continued to work for Foncannon Services, and they received compensation at times and in amounts like the compensation specified in the Agreement. Based upon testimony from Foncannon Services' principal, Robert Foncannon, Gubler and the Corporation did not provide consulting work directly to Foncannon Services after December 31, 2007, the end of the un-extended or un-modified Consulting Period as set forth in the Agreement. Gubler and the Corporation provided services to Foncannon Services' clients, however, many of whom were the Corporation's former clients.

[24] Moreover, there is evidence that as late as 2011, some amount of Foncannon Services' ongoing business with the Corporation's former clients were the result of Gubler's continued involvement with Foncannon Services' accounting

practice. An electronic message from Gubler to Robert Foncannon in April 2011 stated:

> Mark Patterson emailed me. I assume wanting some free help. He has to understand I am finished for tax season, and if he wants my help there will be the same charge as if I were working for Foncannon on a full-time basis. I didn't mind helping him initially so you could land the client.
>
> I copied you in on the email, and you need to make it perfectly clear to him that if he wants my help that there will be a charge for it. I don't expect to volunteer my time once they are a client. And it's not fair to you since technically I am under the non-compete agreement although it would seem fair to be compensated.

(App'x Vol. 2 at 139.) Thus, some of Gubler's and the Corporation's activity may fall into the non-exclusive list of consulting services in the Agreement.

[25] The provisions of the Agreement provide for a possibility of extension. But the provisions do not state that *any* continued work for Foncannon Services on the part of the Corporation or Gubler personally would necessarily result in an extension. Thus, the designated evidentiary matter is essentially silent on the question of whether the parties agreed to an extension or modification of the Agreement, and we are left with the arguments of the parties: Foncannon Services insists the extension ran through 2014, and Gubler and the Corporation insist there was no extension at all.

[26] Taking the evidence together with the inferences favoring Foncannon Services as the nonmovant, we cannot say that there is no question of material fact as to

the existence of a mutual agreement for extending the term of the Consulting Period. That is a fact question to be addressed upon remand by the trial court. We accordingly reverse the entry of summary judgment.[1]

[27] Reversed and remanded for further proceedings.

Robb, J., concurs.
Vaidik, C.J., concurs in result without opinion.

---

[1] We note that the trial court opined "as an aside" that Gubler could not personally be liable for violation of the non-compete provision of the Agreement because the contract was between Foncannon Services and the Corporation, but not Gubler personally. (App'x Vol. 2 at 213.) We note that Gubler is named in the Agreement as being bound by the provisions of the non-compete provision, Gubler was the sole signatory for the Corporation, and Gubler apparently viewed himself as being bound by the non-compete provision. More crucially, Gubler's activities, of which Foncannon Services complains, are identified as occurring under the auspices of the Corporation in at least one of the designated materials at summary judgment—the advertisement from Intuit. (App'x Vol. 2 at 183.)